PULLMAN–STANDARD, A DIVISION
OF PULLMAN INCORPORATED,
Plaintiff,

v.

UNITED STATES of America and
Interstate Commerce Commission,
Defendants,

and

Chicago, Rock Island and Pacific
Railroad Company, William M.
Gibbons, Trustee-Intervenor.

No. 79 C 3259.

United States District Court,
N. D. Illinois, E. D.

Dec. 18, 1981.

Abraham A. Diamond, Chicago, Ill., for plaintiff.

Robert Grueneberg, Asst. U. S. Atty., Chicago, Ill., for defendants.

Don McDevitt, Chicago, Ill., for trustee-intervenor.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Pullman-Standard ("Pullman"), formerly a division of Pullman Incorporated and now a division of Wheelabrator-Frye Corporation, brought this action against the United States and the Interstate Commerce Commission ("ICC") seeking review of a series of ICC orders entered in a dispute involving Pullman and intervenor Chicago, Rock Island and Pacific Railroad Company ("Rock Island"). The controversy revolves around Rock Island's imposition of a local switching charge in place of its traditional reciprocal switching service pursuant to which the switching charge was included within the line-haul rate charged by another carrier. Pullman essentially requests review of four administrative actions: (1) the Administrative Law Judge's determination that the tariff imposed by Rock Island is lawful; (2) the ICC's order denying further hearings on the tariff; (3) the final ICC order affirming the application of Rock Island's tariff to line-haul but not intradistrict movements;

and (4) the ICC's denial of Pullman's claim for reparation for amounts exacted on intradistrict movements. Jurisdiction is asserted under 28 U.S.C. §§ 1336, 1398.

On September 8, 1980, Judge John Powers Crowley, formerly of this Court, held that a federal district court was without jurisdiction to consider Pullman's challenge to the ICC's determination that the Rock Island tariff change was legal and to the administrative action leading up to that decision. Insofar as such a challenge involved more than simply a suit to enforce an ICC order "for the payment of money" within the meaning of 28 U.S.C. § 1336(a), the sole jurisdictional basis for this action in the district court, Judge Crowley ruled that the court of appeals had exclusive jurisdiction over that portion of Pullman's complaint in accordance with the general jurisdictional provisions at 28 U.S.C. §§ 2321, 2342. *United States v. Interstate Commerce Commission*, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949); *Aluminum Company of America v. Interstate Commerce Commission*, 553 F.2d 1268 (D.C.Cir.1977). Judge Crowley held that the only portion of Pullman's complaint that was properly before the district court was the challenge to the ICC order of September 13, 1978, denying reparation.

This matter is now before the Court ostensibly on the parties' cross-motions for summary judgment with respect to that remaining issue. Pullman, however, has taken this opportunity to argue not only the reparation issue, but also the validity of the other ICC orders that Judge Crowley previously ruled were not properly before the Court, apparently in an effort to have this Court reconsider the earlier ruling on jurisdiction and proceed to the merits of Pullman's claims. For the reasons set forth below, the ICC's motion with respect to the reparation issue will be granted and Pullman's motion with respect to that issue will be denied. In addition, after thorough consideration of the arguments raised by Pullman, we decline to disturb Judge Crowley's earlier order regarding the jurisdictional issue.

## I.

Pullman builds railroad passenger cars, including subway coaches. In 1972, Pullman contracted to build subway passenger coaches for the New York City subway system. The cars were to be built at one of Pullman's Chicago plants and transported by rail to Hoboken, New Jersey, the terminus of the railroad across the harbor from New York City. When the cars were completed, Rock Island moved them from Pullman's plant to an interchange point within the Chicago switching district [1] where they were transferred to another rail carrier for transport to Hoboken.

Traditionally, Rock Island provided Pullman reciprocal switching, which meant that Pullman did not pay a separate charge for switching service because the service was included in the line-haul rate charged by the other carrier. In 1975, however, Rock Island published a tariff change that terminated reciprocal switching for shipments of rail passenger coaches loaded on flat cars, thereby requiring that Pullman pay an additional charge for switching service. The additional cost to Pullman amounted to $139,742.26 in local, intradistrict switching charges payable to Rock Island in addition to the line-haul rate payable to the carrier for transport to Hoboken.

Pullman challenged Rock Island's tariff change on the ground that it violated certain ICC orders that prescribed specific rates for movements within the Chicago switching district. *Switching Rates in Chicago Switching District*, 177 I.C.C. 669 (1931); *Switching Rates in Chicago Switching District*, 195 I.C.C. 89 (1933) ("*Switching Cases*"). Pullman also charged that Rock Island's action violated sections 1(4), 1(5),

---

1. A switching district is the area around a city or industrial concentration within which rail cars are moved from one place or plant to another in switching service. These movements may be from one point of manufacture to another or from a point of manufacture to an interchange point at which the shipment can be transferred to a line-haul carrier for transport beyond the district.

1(6), and 3(1) of the Interstate Commerce Act, now codified at 49 U.S.C. §§ 11101(a), 10701a(a), 10702(a)(2), and 10741(b). An Administrative Law Judge initially held for Rock Island on all issues presented. On March 21, 1977, a panel of three ICC Commissioners upheld the tariff as applied to line-haul movements, but the panel agreed with Pullman that the tariff was in violation of the ICC's orders in the *Switching Cases* as applied to intradistrict movements. The panel held that Pullman was entitled to reparation with interest for the unlawfully exacted charges. *Pullman-Standard v. Chicago, Rock Island and Pacific Railroad Company*, 356 I.C.C. 606 (1977).

Pullman submitted a reparation statement to Rock Island seeking repayment of all charges listed in the statement, all of which related to line-haul movements. Rock Island refused to pay in accordance with Pullman's statement on the ground that the ICC had declared the tariff to be unlawful only with regard to its application to intradistrict movement, not line-haul movements. Pullman contended that the ICC had ordered that reparation be made for all movements under the challenged tariff and filed a motion to compel Rock Island to pay the amounts claimed under its reparation statement. On September 13, 1978, the ICC denied Pullman's motion to compel payment of charges related to line-haul movements and held that Pullman was entitled to reparation only for charges related to intradistrict movements within the Chicago switching district during the time the tariff was in effect. It is the September 13, 1978, order that Judge Crowley held was properly before the Court for review.[2]

This Court's review of administrative agency action is relatively narrow in scope. Thus, only if the agency's findings or conclusions are found to be arbitrary, capricious or otherwise not in accordance with law will this Court set them aside under the standard mandated by the Administrative Procedure Act, 5 U.S.C. § 706. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974). In the context of the case at bar, this Court cannot say that the ICC order of September 13, 1978, denying Pullman's motion to compel payment of reparation for switching charges levied on line-haul movements as opposed to intradistrict movements, based upon the Commission's interpretation of its March 21, 1977, order on the merits of Pullman's complaint, was arbitrary, capricious or otherwise not in accordance with law.

In its March 21, 1977, decision on the merits of Pullman's challenge to Rock Island's tariff change, the ICC divided its analysis into two parts. The first section dealt with the application of the tariff with respect to shipments beyond the Chicago switching district (line-haul movements), 356 I.C.C. at 612–16, and the second section dealt with the tariff's application to intradistrict movements, 356 I.C.C. at 616–18. As clearly set forth in the initial two paragraphs in the concluding section of the ICC opinion entitled "Findings and Order," the Commission found that the tariff was unlawful with respect to its application to intradistrict movements, but not with respect to its application to line-haul movements. The relevant portions of the decision state as follows:

> Pullman also sought to appeal Judge Crowley's prior order of September 8, 1980, dismissing those portions of Pullman's complaint that were held not to involve the payment of money but rather a collateral attack on the ICC's decision itself. That appeal was dismissed as being interlocutory in nature pending the determination of the issue now before this Court. In view of the history of this case, we assume that, eventually, the court of appeals will have an opportunity to consider this matter on the merits of some if not all of Pullman's claims.

2. Pullman initially sought review of the ICC's decisions in the United States Court of Appeals for the Seventh Circuit. Pullman voluntarily dismissed that appeal without prejudice, however, after the ICC and Rock Island challenged that court's jurisdiction of Pullman's action filed more than 60 days after the entry of the agency's final administrative determination assertedly in contravention of 28 U.S.C. §§ 2321(a), 2342(5) and 2344. Rock Island also argued that jurisdiction to review orders for the payment of money rested with the district court pursuant to 28 U.S.C. § 1346(a).

In summary, the assailed provision has affected the rates and charges on both the line-haul movement and the intradistrict movement of passenger coaches to and from Pullman-Standard's facilities. With regard to the line-haul movement we conclude that complainant has not shown the assailed provision to be in violation of the Commission's orders in the *Switching* cases, nor in violation of sections 1(4), 1(5), 1(6), and 3(1) of the act. However, we conclude that with respect to the intradistrict movement the assailed provision is in violation of the Commission's orders in the *Switching* cases.

Since an unlawful application of rates and charges will result if the assailed provision is allowed to stand, we find that the assailed provision is too board [sic] in scope, unlawful, and should be canceled. To the extent that complainant has been damaged on all movements of rail passenger coaches loaded on flat cars on or after the effective date of the provision in issue, March 15, 1975, complainant is entitled to reparation with interest of the difference between the rates and charges collected and what the charges would have been without giving effect to the unlawful provision.

In its motion to compel the payment of reparations for switching charges levied on intradistrict movements, Pullman argued—somewhat disingenuously—that since the Commission had stated that it had been "damaged on *all movements* of rail passenger coaches loaded on flat cars on or after the effective date of the provision in issue," *id.* (emphasis added), it was entitled to reparation for both intradistrict and line-haul movements. Pullman's position is at odds with the clear import of the preceding six pages of the Commission's discussion of the issues presented and its determination, in the paragraph immediately preceding the sentence upon which Pullman relies, that the tariff was unlawful only in its application to intradistrict movements within the

Chicago switching district. The ICC correctly interpreted its prior decision when, by order dated September 13, 1978, it denied Pullman's motion to compel the payment of reparation on line-haul movements stating:

> Since the Commission did not find the assailed provision unlawful with respect to eliminating reciprocal switching for line-haul movements to and from the Chicago switching district, complainant was not damaged by payment of applicable switching charges on the line-haul shipments listed in the reparation statement. Complainant is entitled to reparation only on intradistrict movements within the Chicago switching district which occurred during the time the assailed provision was in effect.

Accordingly, the ICC's motion for summary judgment on this issue will be granted and Pullman's cross-motion will be denied.

## II.

▮▮▮▮ Pullman also contends that this Court can and should review the Commission's decision of March 21, 1977, on the merits, despite Judge Crowley's earlier ruling to the contrary. As a matter of comity and sound judicial administration, however, our Court of Appeals has stated that "[w]hen a court states a rule of law which is to be applied in the case before it, the court establishes the 'law of the case' that will normally be applied to the same issues in subsequent proceedings in that case." *James Burroughs Ltd. v. Sign of the Beefeater, Inc.*, 572 F.2d 574, 577 (7th Cir. 1978).[3] We can see no reason to depart from this principle in the case at bar. Judge Crowley thoroughly considered the parties' arguments in the course of his four-page opinion and concluded that the Court lacked subject matter jurisdiction to delve into the merits of the March 21, 1977, decision. That decision was relevant to the issues properly before the Court only inso-

---

**3.** The court went on to quote from *United States v. United States Smelting, Refining & Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950), stating that "[t]he rule of the law of the case is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter."

far as it had a bearing on the reparation issue resolved by the ICC on September 13, 1978, and discussed in part I of this opinion. Pullman has indicated every intention of pursuing this matter on appeal throughout the protracted course of this litigation and, to the extent that Pullman remains intent on pursuing that option, the jurisdictional issue will be aired in that forum.[4]

Accordingly, for the reasons set forth above, the ICC's motion for summary judgment is granted and Pullman's cross-motion is denied. It is so ordered.

---

4. Parenthetically, even if we were to reconsider Judge Crowley's decision with respect to subject matter jurisdiction, we would concur with that decision on the merits. Although 28 U.S.C. § 2342 provides the courts of appeals with exclusive jurisdiction to review final orders of the ICC made reviewable by 28 U.S.C. § 2321, district courts may review ICC orders "for the payment of money ..." pursuant to the narrow provisions of 28 U.S.C. § 1336(a). Direct court of appeals review of ICC decisions that involve broader issues than the payment of money is preferable to district court review because it avoids unnecessary duplication of judicial time and effort spent in reviewing an identical record under the same legal standard. Notwithstanding the court of appeals' decision in *Genstar Chemical, Ltd. v. Interstate Commerce Commission*, 665 F.2d 1304, Nos. 80–1170, 80–1752 and 80–1921 (D.C.Cir. September 25, 1981), upon which Pullman places

heavy reliance herein, we do not think that Congress intended to so eviscerate the grant of exclusive appellate jurisdiction in 28 U.S.C. § 2342 with the passage of the narrow exception in 28 U.S.C. § 1336(a) so that only cases of "widespread interest" would be the proper subject of direct court of appeals review.

Indeed, this issue would not have arisen in the first instance if Pullman had complied with the 60-day limitation period for seeking review of ICC decisions in the court of appeals. 28 U.S.C. § 2344. As noted earlier, *supra* note 2, Pullman initially sought direct appeal from the Commission's orders before the United States Court of Appeals for the Seventh Circuit. That appeal was voluntarily dismissed when the ICC raised the jurisdictional limitations period and Pullman subsequently filed in the district court pursuant to 28 U.S.C. § 1336(a), which does not contain a limitations period.